Marc Antoine CHARLES, Petitioner,

v.

Janet RENO, Attorney General,
et al., Respondents.

No. Civ.A.00–1044 (JCL).

United States District Court,
D. New Jersey.

May 9, 2000.

Edward Shulman, Shulman & Weiss, L.L.P., Paterson, NJ, for plaintiff.

Colette R. Buchanan, Assistant United States Attorney, District of New Jersey, Newark, NJ, for defendant.

## MEMORANDUM AND ORDER

LIFLAND, District Judge.

This matter was opened to the Court by Petitioner's application for a writ of habeas corpus and complaint for declaratory and injunctive relief. Petitioner is in custody pending deportation and claims that he is a United States citizen. For the following reasons, Petitioner's application will be denied.

### BACKGROUND

Petitioner was born in Haiti on August 7, 1976, to Evelyne Petit and Nicholas Charles. Evelyne Petit and Nicholas Charles never married, nor has Evelyne Petit ever been to the United States. Nicholas Charles appears on Petitioner's birth certificate as his natural father. (Ex. C to Pet.) On March 13, 1989, Petitioner lawfully entered the United States, where his father Nicholas was already residing, in Irvington, New Jersey. Nicholas Charles attested that he would provide financial support to is son, and Evelyne Petit signed an affidavit entrusting the care of Petitioner to his father. On November 3, 1993, Petitioner's father became a naturalized United States citizen. At that time, Petitioner was 17 years old.

On September 6, 1996, Petitioner was convicted in New Jersey of Conspiracy and Aggravated Assault. On September 9, 1996, Petitioner was convicted in New Jersey of Aggravated Assault and Unlawful Possession of a Weapon. The Immigration and Naturalization Service ("INS") issued an Order to Show Cause why Petitioner should not be deported pursuant to § 241(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA") on January 17, 1997. (Ex. A to Pet.) An immigration judge denied Petitioner's application for the relief of voluntary departure. At a hearing at which Petitioner was represented by counsel, Petitioner conceded or admitted deportation, and a Final Order of Deportation to Haiti was issued on December 4, 1997. (Ex. 2 to Gov't Answer.) The Board of Immigration Appeals ("BIA") denied Petitioner's Appeal on September 1, 1998.

On November 1, 1999, Petitioner was paroled from the custody of the New Jersey Commissioner of Corrections and taken into custody by the INS. On November 8, 1999, Petitioner moved to reopen his case before the BIA. This was the first occasion on which Petitioner asserted his claim of derivative United States citizenship under § 321 of the INA. 8 U.S.C. § 1432. On January 5, 2000, the BIA denied Petitioner's motion to reopen the case as untimely. In a footnote, the BIA noted that Petitioner claimed derivative United States citizenship under § 321(a)(3) of the INA and commented that "[w]e see no reason to invoke our own authority to reopen these proceedings to address that claim. It is not apparent that the 'legal separation' and 'legal custody' requirements of section 321(a)(3) of the Act have been satisfied here." (Ex. 2 to Gov't Answer.)

On March 6, 2000, Petitioner filed an emergent petition for a writ of habeas corpus and a complaint for declaratory and injunctive relief in this Court. Petitioner alleges that INA Section 321 violates the Equal Protection Clause of the Fifth Amendment by irrationally denying eligibility for relief to illegitimate children of naturalized fathers with sole custody while granting relief to children of naturalized fathers who are legally separated and have legal custody (Count One); and that INA Section 321(a)(3) violates the Equal Protection Clause of the Fifth Amendment because it irrationally denies eligibility for relief to illegitimate children of naturalized fathers while granting eligibility for relief to illegitimate children of naturalized mothers (Count Two).

The Government's Answer admits that this Court has habeas corpus jurisdiction pursuant to 28 U.S.C. § 2241 but states that Petitioner failed to exhaust his administrative remedies because he failed to timely move for reconsideration or seek

judicial review of the September 1, 1998 decision of the BIA. The Government also contends that § 321 does not violate Equal Protection and that because Petitioner is not an "illegitimate child" under the laws of Haiti or New Jersey (his natural father having declared him), he has no standing to bring an Equal Protection claim.

By Order filed March 7, 2000, this Court stayed Petitioner's deportation pending the outcome of its decision on his citizenship status. The Court conducted a hearing on March 23, 2000, at which it concluded that fact issues existed as to whether Petitioner was in the "legal custody" of his father at the time the father became a naturalized United States citizen as required by § 321(a)(3). (Ex. B to Pet.) The Court also expressed doubt as to whether Petitioner could demonstrate his parents' "legal separation" in light of the fact that his parents were never married. The parties have submitted supplemental briefing on § 321(a)(3)'s requirements of "legal custody" and "legal separation."

### STANDARD OF REVIEW

■ There is only a limited scope of judicial inquiry into immigration legislation. Although not specifically delegated to the federal government by the Constitution, "the power to expel or exclude aliens is a fundamental sovereign attribute exercised by the Government's political departments and is largely immune from judicial control." *Fiallo v. Bell*, 430 U.S. 787, 792, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977) (citations omitted) (interpreting a previous version of § 321 and concluding that it was not for the Court to probe and test the justifications for a legislative decision on immigration matters so long as the justifications appeared to be rationally based); *Kleindienst v. Mandel*, 408 U.S. 753, 766, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972) (quotation omitted) ("over no conceivable subject is the Legislative power of Congress more complete than it is over the admission of aliens").

### DISCUSSION

#### I. Jurisdiction

■ The Government's Answer stated that Petitioner failed to exhaust his administrative remedies because "he failed to timely move for reconsideration or seek judicial review of the September 1, 1998 decision of the BIA." (Ans.¶ 21.) At oral argument, the Government agreed that Charles could not have appealed the BIA decision to the Court of Appeals because he is a criminal alien. *See Liang v. INS*, 206 F.3d 308, 323 (3d Cir.2000) (holding that under permanent rules of HRIRA, the Court of Appeals lacks jurisdiction over claims of aliens ordered deported for crimes listed in INA and holding that district courts retain habeas jurisdiction over deportation orders of criminal aliens). Further, this Court believes that a motion to reopen or for reconsideration does not fall within the statutory exhaustion requirement because a motion to reopen or for reconsideration of a final order is a discretionary remedy, and the statutory exhaustion requirement provides only that an alien must exhaust administrative remedies which are available "as of right." § 8 U.S.C. 1252(d). *Accord Zhang v. Reno*, 27 F.Supp.2d 476, 477 (S.D.N.Y. 1998).

■ If Petitioner is a United States citizen, the INS had no jurisdiction to bring deportation proceedings against him. *See Ng Fung Ho v. White*, 259 U.S. 276, 284, 42 S.Ct. 492, 66 L.Ed. 938 (1922) ("[J]urisdiction in the executive and legislative to order deportation only exists if the person is an alien.") It is undisputed that Petitioner's claim of citizenship was not presented to the immigration judge who ordered Petitioner deported, nor to the BIA on direct appeal. It is also undisputed that Petitioner failed to timely move to reopen the deportation proceedings before the BIA. However, in his untimely motion to reopen, Petitioner did assert his claim of derivative citizenship, a claim not resolved by the BIA. In its Answer and at oral

argument, the Government stated that it does not challenge this Court's habeas corpus jurisdiction. This Court concludes that habeas jurisdiction is appropriate notwithstanding Petitioner's failure to timely present his claim of United States citizenship to the INS or the BIA.

The Court will first assess whether Petitioner has demonstrated that he is a United States citizen pursuant to the INA. Then, if the Court concludes Petitioner does not qualify for derivative citizenship, the Court will evaluate Petitioner's Equal Protection arguments concerning the constitutionality of the INA provisions.

*II. Derivative Citizenship*

■■ There are only two ways to acquire United States citizenship, birth or naturalization. *See Miller v. Albright,* 523 U.S. 420, 423, 118 S.Ct. 1428, 140 L.Ed.2d 575 (1998) (quoting *United States v. Wong Kim Ark,* 169 U.S. 649, 702, 18 S.Ct. 456, 42 L.Ed. 890 (1898)). Petitioner claims that he derived citizenship through his father's naturalization in 1989 pursuant to section 321 of INA. A child's acquisition of citizenship on a derivative basis occurs by operation of law. *See In re Julio Augusto Fuentes–Martinez,* 1997 WL 219496, Interim Decision 3316 (BIA 1997) ("[t]he actual determination of derivative citizenship under section 321(a) of the Act may occur long after the fact, in the context of a passport application or a claim to citizenship made in deportation proceedings").

Section 321 of the INA provides as follows:

A child born outside of the United States of alien parents ... becomes a citizen of the United States upon fulfillment of the following conditions:

(1) The naturalization of both parents; or

(2) The naturalization of the surviving parent if one of the parents is deceased; or

(3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if

(4) Such naturalization takes place while such child is under the age of eighteen years; and

(5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized under clause (1) of this subsection, or the parent naturalized under clause (2) or (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years....

8 U.S.C. § 1432. Petitioner seeks to invoke the first clause of section 321(a)(3), which authorizes derivative citizenship upon the naturalization of the parent having legal custody of a child when there has been a legal separation of the parents. It is undisputed that Petitioner meets the additional requirements of section 321(a)(4) and (a)(5).

■ *Child.* For purposes of § 321 (8 U.S.C. § 1432), "child" is defined as follows:

an unmarried person under twenty-one years of age and includes a child legitimated under the law of the child's residence or domicile, or under the law of the father's residence or domicile, whether in the United States or elsewhere, and, except as otherwise provided in sections 1431 and 1432 of this title, a child adopted in the United States, if such legitimation or adoption takes places before the child reaches the age of sixteen years, and the child is in the legal custody of the legitimating or adopting parent or parents at the time of such legitimation or adoption.

8 U.S.C. § 1101(c)(1). Under the Civil Code of Haiti, as amended by 1959 Presi-

dential Decree, a child born out of wedlock after January 27, 1959 and acknowledged by his natural father is considered "legitimated" and has the same rights and obligations as a "legitimate" child (defined as a child born of married parents). *See Matter of Richard,* 18.1 & N.Dec. 208, 209 (BIA 1982) ("We have held that when the country where a beneficiary was born and resides eliminates all legal distinctions between legitimate and illegitimate children, all subsequently born children are deemed to be the legitimate off-spring of their natural fathers for immigration purposes.").[1] Under the New Jersey Parentage Act, effective May 21, 1983, all children and parents have equal rights with respect to each other regardless of the marital status of their parents. *See* N.J.Stat.Ann. §§ 9:17–38 to –59; *Matter of Garcia,* 19 I. & N.Dec. 416 (BIA 1986). ·It is undisputed that Petitioner was legitimated under Haiti and New Jersey law. Therefore, Petitioner meets the statutory definition of a child. *See* 8 U.S.C. § 1101(c)(1).

■ *Legal Custody.* Legal custody under § 321(a)(3) of the child resides in the parent who has been granted custody of the child by a court order or statutory grant, or, where no such order or grant exists, in the parent having actual uncontested custody of the child. *See Matter of M.* 3 I. & N.Dec. 850 (BIA 1950) (interpreting a previous version of § 321[2] and

concluding that even in the absence of a court award of custody to divorced naturalized father, where the father had actual, uncontested custody, he also had "legal" custody[3]). In a more recent case, albeit one interpreting a different definitional section of the Act,[4] the BIA, for purposes of visa preferences, refined its analysis of the presumption of legal custody, in favor of the natural father of a legitimated child. *See Matter of Rivers,* 17 I. & N.Dec. 419 (BIA 1980) (reversing denial of visa petition on behalf of legitimated alien daughter of naturalized father). In *Rivers,* the parents had never been married, and the natural father had legitimated his daughter under the applicable laws before she reached the age of eighteen. *See id.* at 420. The BIA held as follows.

> Unless there is evidence to show that the father of a legitimated child has been deprived of his natural right to custody, he will be presumed to share custody with the mother, and to satisfy the legal custody requirement of section 101(b)(1)(C).

*Id.* at 423· The BIA explained that "[w]e believe that this interpretation of the legal custody requirement will give better effect to Congress' humane and remedial intent in including a legitimated child within, the definition of child." *Id.* at 422 (citation omitted).

1. Under Haitian law, an "illegitimate" child is a child born of an adulterous or incestuous relationship. *See Matter of Richard,* 18 I. & N.Dec. 208.211 (BIA 1982).

2. That is, § 314(c), the language of which mirrored the present-day § 321 and which provided for derivative United States citizenship upon the naturalization of the parent having legal custody where there had been a legal separation. 8 U.S.C. § 714, Act Oct. 14, 1940, c. 876. Title I, subchap. III, § 314.54 Stat. 1145 (repealed 1952).

3. The Court notes that the issue of "legal custody" in *Matter of M* was incidental to the question presented of whether the court would recognize as "legal separation" the annulment of a marriage of a non-Jewish wom-

an and a Jewish man pursuant to the Nazi Marriage Act of 1938. *See id.* at 854 (concluding that "a dissolution under the Hitler law did not affect the legitimacy of the offspring and, in general, had the effect of a divorce and not of annulment").

4. That is, section 101(b)(1)(C) of INA, which includes within its definition of "child" the following: "a child legitimated under the law of the child's residence or domicile, or under the law of the father's residence of domicile, whether in our outside the United States, if such legitimation takes place before the child reaches the age of eighteen years and the child is in the *legal custody* of the legitimating parent or parents at the time of such legitimation." 8 U.S.C. § 1101(b)(1)(C) (emphasis added).

█ As proof of legal custody in the instant case, Petitioner has submitted (1) a copy of a notarized letter, dated June 1987, from the mother stating that she authorized Petitioner to live in the United States with his father, and (2) a copy of a notarized letter, dated February 1, 2000, from the mother stating that she "gave [her] son Marc Antoine Charles to his father Nicolas Charles since [sic] he was 4 years old. Since that juncture, he has been the responsible party for Marc Antoine Charles." [5] Under either the *Matter of M* or *Rivers* standards, Petitioner has satisfied this Court that his father had "legal custody" of him at the time the father became a naturalized United States citizen because the father had actual, uncontested custody, although not pursuant to any court order or statutory grant.

█ *Legal Separation.* This Court finds that Petitioner cannot meet 321(a)(3)'s requirement of "legal separation" of the parents. In *Matter of H*, 3 I. & N.Dec. 742 (BIA 1949) (the only immigration case this Court or either party has located interpreting "legal separation"), the BIA held that legal separation can be accomplished only by judicial proceedings for divorce or separation and that parents who were not lawfully joined in marriage could not have been legally separated. *See id.* at 744. There, the BIA analyzed a previous, virtually identical provision granting derivative citizenship to children of naturalized citizens where the naturalized parent had legal custody pursuant to a legal separation.[6] *See id.* at 743–44. In the instant case, Petitioner's parents were never married. Petitioner urges this Court to expand the plain meaning of legal separation to encompass a situation devoid of a union recognized by law. Petitioner also urges this Court to distinguish *Matter of H* from the instant case because in*Matter of H* there was evidence to suggest that the father was not certain whether the

child was his. *See id.* at 743. In the instant case, there is no such uncertainty; the father of Petitioner is listed on Petitioner's birth certificate and gave financial support to the son from a very early age. Petitioner also argues the cases of *Matter of H* and *Matter of M* are antiquated and "were determined utilizing philosophies that have since become outdated." (Letter Br. 4/24/00.) Be that as it may, this Court refuses to read a meaning into 321(a)(3)'s "legal separation" requirement entirely contrary to the common sense understanding of that phrase, which presupposes a union recognized by law and a separation recognized by law.

█ The paramount canon of statutory interpretation is that a court must first direct its inquiry to the statute's actual language. *See Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992); *Smith v. Fidelity Consumer Discount Co.*, 898 F.2d 907, 909–10 (3d Cir.1990). Where the statutory language is clear on its face, a court must give it full force and effect. *See United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed. 615 (1955) (citation omitted). The language of § 321(a)(3) is clear on its face. The statute does not refer simply to "separation," but rather to "legal separation ." The plain meaning is that the separation of the parents must be recognizable legally. Petitioner has produced no support for the proposition that Haitian, New Jersey, or United States immigration courts would assign to the relationship of Petitioner's natural parents such an attribute. The Court recognizes that the foregoing analysis of "legal" separation requires more formality than did the Court's analysis of "legal" custody. However, the Court is not troubled by this difference because custody is a right devolving from parentage whereas separation is merely a status

---

5. Both original documents are in French Petitioner provided the Court with certified translations.

6. That is, the former § 314(c) of the INA. *See* note 2 above.

that may have varying degrees of legally recognizable permanence.

Based on the plain language of § 321(a)(3), the Court concludes that Petitioner did not acquire derivative citizenship when his father became a naturalized United States citizen in 1989.

### III. Equal Protection

 The constitutional promise of equal protection of the laws applies to aliens as well as citizens. *See Yick Wo v. Hopkins*, 118 U.S. 356, 368–69, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). The degree of scrutiny to be applied to ensure compliance with this directive differs depending on the nature of the classification. *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439–42, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (concluding that mental retardation was not a quasi-suspect classification). Petitioner brings two Equal Protection claims. The first is based upon denying derivative citizenship to "illegitimate children of naturalized fathers with sole custody while granting relief to children of naturalized fathers who are legally separated and have legal custody ." The second is based on the fact that 321(a)(3) "denies eligibility for relief to illegitimate children of naturalized fathers while granting eligibility for relief to illegitimate children of naturalized mothers." (Compl.) The Court will address each in turn.

*First Equal Protection Claim.* Petitioner phrases his challenge in terms of the distinction between "illegitimate children of naturalized fathers with sole custody" and "children of naturalized fathers who are legally separated and have legal custody." The Court first notes that Petitioner is not an "illegitimate" child. He is a child born out of wedlock, whose paternity has been established by legitimation. However, insofar as Petitioner is asserting that the distinction between children born of legally separated parents and children born "out of wedlock" (where no legal separation has occurred) is arbitrary, irration-

al, and violative of the Equal Protection Clause, the Court finds that Petitioner has standing to assert that there is an Equal Protection violation.

 Although in other substantive areas of the law, courts have applied an intermediate level of scrutiny to laws that distinguish between children born out of wedlock and legitimate children. *Clark v. Jeter*, 486 U.S. 456, 461, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988), courts give Congress great deference in matters of immigration and naturalization and have upheld laws that subject children born out of wedlock to American fathers to different standards than legitimate children of American fathers where those standards are rationally related to a legitimate governmental interest. *See Fiallo v. Bell*, 430 U.S. 787, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977). Further, the Court is mindful of the fact that "[i]n the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 79–80, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976) (no due process violation to condition an alien's eligibility for participation in a federal medical insurance program on five years of continuous residence in the United States coupled with admission for permanent residence). Therefore, the classification in the instant case will be analyzed according to the general rule that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate governmental interest.

 Congress' decision to limit the right to derivative United States citizenship to the offspring of couples who chose to formalize their relationship, such that the relationship may be formally or legally dissolved, is not arbitrary or irrational. Such a limitation is related to a legitimate governmental interest because it facilities verification of the records of the entire family in the home country. The distinction

between children born out of wedlock (although legitimated) and children born of married parents who subsequently undergo a legal separation is rationally related to the governmental interest of eliminating any uncertainties involved in the identification of the relationships between the actors upon which the grant of derivative citizenship depends. *See Fiallo,* 430 U.S. at 795 n. 6, 97 S.Ct. 1473 ("there are widely varying relationships and degrees of kinship, and it is appropriate for Congress to consider not only the nature of these relationships but also problems of identification, administration, and the potential for fraud.") The ability to consult governmental records exists where there has been a legal separation, but not otherwise. Accordingly, Petitioner's first Equal Protection claim is rejected.

■ *Second Equal Protection Claim.* Petitioner's Application/Complaint also asserts an Equal Protection claim based on the gender distinction in the second clause of § 321(a)(3). That clause provides for derivative citizenship to children born outside the United States upon "the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation." 8 U.S.C. § 1432. While Petitioner is a "a child born out of wedlock," he is not a child whose parentage "has not been established by legitimation." Under the second clause of § 321(a)(3), only children born out of wedlock whose paternity has not been established may acquire United States citizenship upon the naturalization of the mother. Therefore, Petitioner would not have derived citizenship had it been his mother who was naturalized (as opposed to his father) because both his parents have been established by legitimation. A child born out of wedlock and legitimated cannot derive United States citizenship through only one parent where there has been no legal separation.

However, even assuming that Petitioner's paternity has not been established by legitimation. Supreme Court precedent requires that his Equal Protection argument regarding the presumptions given to the mother of a child born out of wedlock where no paternity has been established must fail. *See Miller v. Albright,* 523 U.S. 420, 118 S.Ct. 1428, 140 L.Ed.2d 575 (1998) (upholding statute granting citizenship to children born abroad of one American parent and a foreign parent although statute differentiates between children born of American women and children of American men); *Lehr v. Robertson,* 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983) (upholding state law giving mothers of children born out of wedlock notice of adoption proceedings and right to veto adoptions, but granting those rights to natural fathers only where the fathers have first formally declared paternity); *Fiallo v. Bell,* 430 U.S. 787, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977) (upholding statute granting visa preferences to children born out of wedlock by virtue of the relationship with their natural mothers but denying visa preferences by virtue of the relationship with natural fathers unless legitimation of the children occurs).

The Court recognizes that the issues presented in *Miller, Lehr* and *Fiallo* all revolved around whether it is permissible not to recognize rights of natural fathers of children born out of wedlock unless those fathers have taken affirmative steps to declare paternity. In each case, where the fathers declared paternity, the rights they possessed with respect to the child were considered co-equal to the rights of the natural mother. The Court is aware that none of the cases cited above required the father to actually marry the natural mother in order to have co-equal rights. In the instant case, Petitioner's father did declare paternity but still could not pass citizenship to his son. However, as noted above, neither may a natural mother pass citizenship to a child where there is a declaration of paternity and no legal separation. Under § 321, the only way for one parent (who is not the sole surviving parent or the sole legitimating parent) to pass derivative citizenship to a child born out of wedlock is where that parent has custody

of the child and there has been a legal separation. So, fathers never married to the mothers of the natural offspring of both can never pass citizenship under § 321 as long as the mother is alive and does not become a United States citizen. Similarly, mothers who have children out of wedlock where the paternity is established can never pass derivative citizenship to their children absent a legal separation or the naturalization of the father. Therefore, there is no gender distinction in the statute as it applies to the facts of Petitioner's case.

In sum, where paternity is established and there has been no legal separation of the parents, there can be no derivative citizenship for the child through the naturalization of just one parent, be it the mother or the father. As explained above, it is within Congress' discretion to deny derivative citizenship to a class of children consisting of children born out of wedlock, who have been legitimated, but whose parents were never legally separated, and only one of whose parents becomes a naturalized United States citizen. Under the statute as written, both of Petitioner's parents would have had to become naturalized citizens while Petitioner was under 18 in order for Petitioner to have derived citizenship. In cases such as Petitioner's, the Court must defer to Congress' determination that Petitioner's only path to United States citizenship is on his own merits by meeting the qualifications otherwise applicable to gaining naturalized United States citizenship. There is no equal protection violation because the distinction in § 321 is rationally related to a legitimate governmental interest.

Accordingly, **IT IS** on this 9th day of May 2000 **ORDERED** that the petition for habeas corpus relief is denied and this action is dismissed. The Court recognizes that there is a reasonable basis on which an appeal could be premised.