**Jhonson BARTHELEMY, aka Johnson Barthelemy, Petitioner,**

v.

**John D. ASHCROFT, U.S. Attorney General, Respondent.**

No. 01–71529.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 4, 2002.

Filed May 23, 2003.

As Amended June 9, 2003.

Angela M. Bean, Angela M. Bean & Associates, San Francisco, CA, for the petitioner.

Ernesto Molina, Jr., Office of Immigration Litigation, Washington, D.C., for the respondent.

Before NOONAN, BERZON, and TALLMAN, Circuit Judges.

## OPINION

TALLMAN, Circuit Judge.

We must decide whether § 321(a) of the Immigration and Nationality Act, now repealed, grants derivative citizenship to Petitioner Jhonson Barthelemy. We hold that it does not. We further reject Barthelemy's constitutional challenges to § 321(a). We hold that a bona fide reason supports the legal separation requirement of § 321(a)(3) and that § 321(a)(3) does not discriminate on the basis of gender, at least as applied to this petition. Barthelemy's petition for review is dismissed.

I

Jhonson Barthelemy appeals a final order of removal issued by the Board of Immigration Appeals (BIA). In 1998, Barthelemy was convicted of unlawful sexual intercourse with a minor, in violation of California Penal Code § 261.5(a). Barthelemy concedes that, as a result of this conviction, he is an aggravated felon. *See* 8 U.S.C. § 1101(a)(43)(A). Because he is an aggravated felon, Barthelemy is subject to immediate removal from this country unless he can establish that he is a United States citizen. 8 U.S.C. § 1227(a)(2)(A)(iii).

The facts in this petition are not disputed. Barthelemy was born in Port–au–

Prince, Haiti, in 1978 to Enese Jean–Baptiste and Roger Barthelemy. Neither Roger nor Enese were United States citizens at the time of Barthelemy's birth. Barthelemy does not know, and has never known, his natural mother, Enese. Enese left Barthelemy to the care of his father and paternal grandparents soon after giving birth. Roger and Enese never married.

Roger immigrated to the United States and became a lawful permanent resident in 1986. Thereafter, Roger married Marie, a naturalized United States citizen. Based on a visa petition filed on his behalf by Roger and Marie, Barthelemy entered the United States in 1989 as a lawful permanent resident. At the time, Barthelemy was 11 years old. Marie never adopted Barthelemy.

Roger was naturalized as a United States citizen in 1993 when Barthelemy was 14 years old. Whether Roger's naturalization derivatively conferred United States citizenship on Barthelemy is the issue before us.

## II

■ We do not have jurisdiction to review a criminal alien's final order of removal. 8 U.S.C. § 1252(a)(2)(C). But where, as here, the petitioner claims he is a United States citizen not subject to removal, we have jurisdiction to determine whether the petitioner is an alien or a citizen. 8 U.S.C. § 1252(b)(5)(A); *Hughes v. Ashcroft*, 255 F.3d 752, 755 (9th Cir. 2001). We must dismiss Barthelemy's petition if we find that he is not a citizen.

■ No affirmative steps were taken to naturalize Barthelemy; therefore, he has citizenship, if at all, only derivatively through his father. As Barthelemy was born abroad to alien parents, derivative citizenship in this case is governed by Immigration and Nationality Act (INA) § 321(a), 8 U.S.C. § 1432(a), now repealed.[1] In relevant part, § 321(a) provides:

A child born outside of the United States of alien parents ... becomes a citizen of the United States upon fulfillment of the following conditions:

(1) The naturalization of both parents; or

(2) The naturalization of the surviving parent if one of the parents is deceased; or

(3) The naturalization of the parent having legal custody of the child when there *has been a legal separation* of the parents *or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation;* and if

(4) Such naturalization takes place while such child is under the age of eighteen years; and

(5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized under clause (1) of this subsection, or the parent naturalized under clause (2) or (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years.

8 U.S.C. § 1432(a) (emphasis added). It is undisputed that Barthelemy meets the

---

1. The Child Citizenship Act of 2000(CCA) repealed INA § 321 and amended INA § 320. If the CCA applied retroactively, it appears Barthelemy would have attained citizenship when his father naturalized in 1993 when Barthelemy was 14 years old. But we have held that "the CCA granted automatic citizenship only to those children who were under the age of 18, and who met the other criteria, on February 27, 2001." *Hughes*, 255 F.3d at 760. Barthelemy was 22 years old on February 27, 2001; therefore, the CCA has no application here, and Barthelemy must rely upon the now-repealed INA § 321.

conditions set forth in subsections (4) and (5) and is therefore a citizen if subsections (1), (2), or (3) apply. Subsections (1) and (2) do not apply here because only Barthelemy's father—and not his mother—has been naturalized, and no evidence in the record suggests that Barthelemy's mother is deceased. Thus, Barthelemy can only claim derivative citizenship if he satisfies the requirements of § 321(a)(3).

We review de novo the question of law presented. *Hughes,* 255 F.3d at 757–58. Barthelemy plainly does not qualify for citizenship under the latter clause of § 321(a)(3), which requires "the naturalization of the *mother* if the child was born out of wedlock and the paternity of the child has not been established by legitimation." (emphasis added).

Based on our review of the statute and case law, and using the usual meanings of the statutory terms, we hold that Barthelemy does not enjoy derivative citizenship under the first clause of § 321(a)(3) because his natural parents never married and thus could not *legally* separate. *See Nehme v. Immigration and Naturalization Serv.,* 252 F.3d 415, 425–26 (5th Cir. 2001) (holding that legal separation under § 321(a)(3) means "a formal, *judicial* alteration of the marital relationship") (emphasis in original); *Wedderburn v. Immigration and Naturalization Serv.,* 215 F.3d 795, 799–800 (7th Cir.2000) (disregarding petitioner's argument that "legal separation" under § 321(a)(3) means only "not being legally joined"); *Charles v. Reno,* 117 F.Supp.2d 412, 418 (D.N.J.2000) (noting that § 321(a)(3) requires *legal* separation, which means that "the separation of

the parents must be recognizable legally").[2]

## III

Anticipating our holding that he does not have citizenship under the language of § 321(a), Barthelemy challenges the constitutionality of the provision on two equal protection grounds. First, he argues that § 321(a)(3) irrationally classifies petitioners seeking citizenship based on the former marital status of the petitioners' parents. Next, Barthelemy contends § 321(a)(3) impermissibly discriminates on the basis of gender. We reject both arguments.

## A

■ Our review of Barthelemy's Fifth Amendment equal protection claim that § 321(a) unconstitutionally discriminates on the basis of his parents' former marital status is quite narrow. Congress has nearly plenary power to establish the qualifications for citizenship. U.S. Const. art. I. § 8 ("The Congress shall have Power ... To establish an [sic] uniform Rule of Naturalization"); *Fiallo v. Bell,* 430 U.S. 787, 792, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977) (emphasizing that "over no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens") (internal citations and quotations omitted). We therefore must uphold the constitutionality of § 321(a) if a "facially legitimate and bona fide reason" supports the distinction made by the statute. *Fiallo,* 430 U.S. at 794–95, 97 S.Ct. 1473. We have equated this standard of review with rational basis review. *See Ablang v. Reno,* 52 F.3d 801, 804 (9th Cir. 1995); *Wauchope v. United States Dept. of*

---

**2.** Our conclusion that the term "legal separation" in § 321(a)(3) presupposes a valid marriage is consistent with the agency interpretation of "legal separation." *In the Matter of H——,* 3 I. & N. Dec. 742, 744 (B.I.A.1949) ("Since the subject's parents were not lawful-

ly joined in wedlock, they could not have been legally separated."); *see also In the Matter of Mowrer,* 17 I. & N. Dec. 613, 615 (B.I.A.1981) (holding that a married couple living apart with no plans for reconciliation were not legally separated).

*State*, 985 F.2d 1407, 1414 n. 3 (9th Cir. 1993).

Reading § 321(a) in its entirety, we think that Congress generally intended to provide automatic citizenship to children born abroad of alien parents only after the naturalization of *both* biological parents. This policy is rational for at least a few reasons, but we need only discuss one rationale here: the protection of parental rights. If United States citizenship were conferred to a child where one parent naturalized, but the other parent remained an alien, the alien's parental rights could be effectively extinguished. *See Fierro v. Reno*, 217 F.3d 1, 6 (1st Cir.2000) (noting that § 321(a) presumably demonstrates the congressional intent to protect children from "separation from the parent having legal custody during the child's minority"); *Wedderburn*, 215 F.3d at 800 ("Both the child and the surviving but non-custodial [alien ] parent may have reasons to prefer the child's original citizenship, which may affect obligations such as military service and taxation."). Thus, § 321(a) prevents the naturalizing parent from usurping the parental rights of the alien parent.

Nonetheless, recognizing that this general rule of derivative citizenship might sweep too broadly, Congress carved out three additional avenues to citizenship in § 321 that apply where only one parent naturalizes. If the alien parent has deceased, or if the natural father has not legitimated his child, and the mother naturalizes, citizenship for the child is possible. INA § 321(a)(2)-(3), 8 U.S.C. § 1432(a)(2)-(3). Citizenship is also provided to "[a] child born outside the United States of alien parents ... upon ... [t]he naturalization of the parent having legal custody of the child when there has been a legal separation of the parents...." INA § 321(a)(3), 8 U.S.C. § 1432(a)(3).

Barthelemy challenges the constitutionality of this latter provision. Essentially, Barthelemy argues that the legal separation requirement of § 321(a)(3) is irrational. Barthelemy contends that the clause impermissibly distinguishes between those children born of parents who never married and those born of parents who at one time were married and then legally separated.[3] We disagree. The legal separation requirement helps protect the parental rights of the alien parent, and is therefore consistent with the statutory scheme.

An example is helpful to understand how § 321(a)(3) furthers this rational basis. Suppose Enese, Barthelemy's mother, abandoned her son soon after giving birth and thereafter immigrated to the United States, where she naturalized. Suppose further that Roger cared for Barthelemy and that Roger loathed the United States because Enese now lived there. Now suppose that Enese, feeling bad about abandoning her son, returns to Haiti, snatches Barthelemy, and brings him to the United States, where Barthelemy becomes a lawful permanent resident. In this situation, the legal separation requirement protects the parental rights of Roger. Because Enese cannot prove she was ever legally separated from Roger—though perhaps she could prove legal custody over Barthelemy[4]—Barthelemy is not conferred citizenship; thus, Roger's desire that his son

---

**3.** The following hypothetical, advanced by Barthelemy, illustrates the effect of this distinction: suppose the petitioner's parents marry shortly after the petitioner's birth, but then obtain an annulment one week later. The mother subsequently abandons the child, leaving the father as the sole caregiver. This child—because of the annulment—is entitled to citizenship under § 321(a)(3). But for those petitioners, like Barthelemy, whose parents never married, the first clause of § 321(a)(3) acts as a bar to citizenship.

**4.** In the case of a child born out of wedlock, we think it is often the case that neither natural parent will have been awarded legal

not become a United States citizen is honored.

The statute may not be perfect. Perhaps Congress should have carved out an additional route to citizenship for petitioners such as Barthelemy whose fathers have naturalized and have custody over their children but who never married the natural mother of their children. But certainly § 321(a) as drafted passes rational basis review. We therefore hold that Congress had a facially legitimate and bona fide reason for distinguishing between those children whose parents never married, like Barthelemy, and those children whose parents married and then legally separated.

## B

■ Barthelemy next charges that the second clause of § 321(a)(3) unconstitutionally discriminates on the basis of gender. That clause provides for derivative citizenship upon the "naturalization of the *mother* if the child was born out of wedlock and the paternity of the child has not been established by legitimation." · (emphasis

added). Section 321(a)(3) does not classify Barthelemy on account of *his* sex. Rather, the section accords differential treatment to children of unmarried fathers as opposed to children of unmarried mothers. We assume without deciding that Barthelemy would be entitled to the heightened standard of scrutiny applicable to gender-based discrimination with respect to this challenge to this section, were it discriminatory on the basis of sex. *See Craig v. Boren,* 429 U.S. 190, 197, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976); *see also Miller v. Albright,* 523 U.S. 420, 454 n. 1, 118 S.Ct. 1428, 140 L.Ed.2d 575 (Scalia, J., concurring), 523 U.S. at 476, 118 S.Ct. 1428 (Breyer, J., dissenting).

Barthelemy's claim must fail, however, because as applied to this case, § 321(a)(3) does not discriminate on the basis of sex. Barthelemy admits that his father legitimated him.[5] As a legitimated child, neither Barthelemy's father *nor his* mother could pass citizenship to him unless: (1) both parents naturalized, (2) one of the parents died, or (3) the parents legally separated and the parent with legal custo-

custody of the child by a court. Thus, the parent with physical control of the child will have a claim to "legal custody" over the child. Requiring both legal custody and legal separation protects the alien parent who, as in the above hypothetical, may have wrongly been deprived of custody.

Another example shows how the legal separation requirement is not superfluous in preserving parental rights. Suppose that, because of a mental condition or incarceration, one parent is denied custody of the child. However, both parents remain married. As the Seventh Circuit observed: "Often these conditions will pass, and the parents will resume living together with joint custody of the child. Congress rationally could conclude that as long as the marriage continues the citizenship of the children should not change automatically with the citizenship of a single parent." *Wedderburn,* 215 F.3d at 800.

5. Barthelemy's concession that his father legitimated him appears to be correct under both

California and Haiti law. A father may legitimate a child born out of wedlock under California law by receiving that child into his home and by holding out that child as his natural child. Cal. Fam.Code § 7611(d); *see also United States v. Viramontes–Alvarado,* 149 F.3d 912, 916 (9th Cir.1998) (recognizing that under the now repealed Cal. Civ.Code § 230, a father legitimates his illegitimate child only if the child resides with the father, the father acknowledges the child as his own, and, if married, the father has his wife's consent). In this case, Roger Barthelemy took his son into his home with his wife Marie's consent, and he held out Barthelemy *as his* son. Therefore, Roger legitimated his son under California law. Barthelemy apparently is legitimated under Haiti law as well. By a 1959 Presidential Decree in that country, children born out of wedlock are considered "legitimated" if paternity is acknowledged by the father. *See Charles,* 117 F.Supp.2d at 416–17; *Matter of Cherismo,* 19 I. & N. Dec. 25, 26 (B.I.A.1984).

dy naturalized.[6] INA § 321(a)(1)-(3), 8 U.S.C. § 1432(a)(1)-(3). Thus, § 321(a) makes no sex-based distinction when the petitioner has been legitimated. *See Wedderburn,* 215 F.3d at 802 (explaining that a legitimated child has no sex discrimination claim under § 321(a)(3)); *Barton v. Ashcroft,* 171 F.Supp.2d 86, 90 (D.Conn.2001) ("A child born out of wedlock who had never been legitimated might have a gender-based equal protection claim [under § 321(a)(3)], albeit a losing one in light of [*Nguyen v. INS,* 533 U.S. 53, 121 S.Ct. 2053, 150 L.Ed.2d 115 (2001) ], but a legitimated child such as Petitioner has no such claim at all."); *Charles,* 117 F.Supp.2d at 421 (noting that "there is no gender distinction" under § 321(a)(3) if the child has been legitimated).

We think Barthelemy's real objection to § 321(a) is not that it explicitly discriminates on the basis of sex. Rather, Barthelemy objects to the varying definition of legitimation and, in particular, how that definition varies because of the sex of the "legitimating" parent. To explain, fathers must often take affirmative steps to legitimate their children under the laws of various states and nations, but mothers typically legitimate their children by giving birth. Barthelemy argues: "While [Barthelemy's] father properly legitimated[him], it is clear that if the same standards for legitimation were applied to his mother, her actions would not have qualified as legitimation."

Unfortunately for Barthelemy, the Supreme Court extinguished this equal protection argument in *Nguyen.* 533 U.S. 53, 121 S.Ct. 2053, 150 L.Ed.2d 115. The Court there explained that "Congress' decision to impose requirements on unmarried fathers that differ from those on unmarried mothers is based on the significant difference between their respective relationships to the potential citizen at the time of birth." *Id.* at 62, 121 S.Ct. 2053. The Court held that the government has an important interest in requiring the father to prove paternity before citizenship attaches to his child. *Id.* at 62–68, 121 S.Ct. 2053 (noting the important interest "of assuring that a biological parent-child relationship exists" as well as the important interest of ensuring that the child has sufficient ties to the United States). *Nguyen* therefore precludes relief.

### IV

Petitioner Barthelemy does not have derivative citizenship under § 321(a)(3) because his parents never married and hence could not legally separate. His equal protection arguments fail because a facially legitimate and bona fide reason supports the distinction in the first clause of § 321(a)(3) based on former marital status, and, at least as applied to this petition, the statute does not discriminate on the basis of gender. Because Barthelemy is not a citizen, his petition for review must be dismissed.

**DISMISSED.**

---

**6.** An example makes this clear. Suppose Roger, Barthelemy's father, never immigrated to the United States but that Enese, Barthelemy's mother, did move to the United States and was naturalized. Suppose further that, after living with his father in Jamaica, Barthelemy moved to the United States, became a lawful permanent resident, and petitioned for citizenship derivatively through his mother.

In this case, Barthelemy would not be entitled to citizenship because his father legitimated him. INA § 321(a)(3), 8 U.S.C. § 1432(a)(3) (providing derivative citizenship upon "the naturalization of the mother if the child was born out of wedlock and *the paternity of the child has not been established by legitimation* ") (emphasis added).