# Eligibility of Unlegitimated Children for Derivative Citizenship

An alien child who was born out of wedlock and whose paternity has not been established by legitimation is eligible for derivative citizenship under section 320 of the Immigration and Naturalization Act at the time the child's mother becomes a naturalized citizen.

July 24, 2003

MEMORANDUM OPINION FOR THE ACTING PRINCIPAL LEGAL ADVISOR
BUREAU OF CITIZENSHIP AND IMMIGRATION SERVICES
DEPARTMENT OF HOMELAND SECURITY

Section 320(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1431(a), as amended by the Child Citizenship Act of 2000, Pub. L. No. 106-395, 114 Stat. 1631 (2000) ("CCA"), provides automatic United States citizenship to a child born outside the United States upon the satisfaction of a specified set of conditions. One of these conditions is that "[a]t least one parent of the child is a citizen of the United States, whether by birth or naturalization." INA § 320(a)(1), 8 U.S.C. § 1431(a)(1). Your predecessor agency, the Immigration and Naturalization Service, asked for our opinion whether this condition is satisfied for an alien child who was born out of wedlock and whose paternity has not been established by legitimation at the time the child's mother becomes a naturalized citizen.[1] For the reasons stated below, we conclude that it is.

## I.

The term "derivative citizenship" refers to citizenship that a child may derive *after birth* through the naturalization of a parent. *See* 7 C. Gordon et al., *Immigration Law and Procedure* § 98.03[1] (2003). It is distinct from the acquisition of citizenship *at birth*, including the "citizenship by descent" that may be conferred on a child born abroad to a citizen parent. *See id.*; *see also* INA § 301(c), (d), (e), (g), 8 U.S.C. § 1401(c), (d), (e), (g) (2000) (examples of INA provisions conferring citizenship by descent).

In enacting the INA in 1952, Congress expressly provided that an alien child who was born out of wedlock outside the United States and whose paternity had not been established by legitimation could acquire derivative citizenship through

---

[1] Memorandum for Daniel Koffsky, Acting Assistant Attorney General, Office of Legal Counsel, from Bo Cooper, General Counsel, Immigration and Naturalization Service, *Re: Children Born Out-of-Wedlock and Eligibility for Derivative Citizenship Under the Child Citizenship Act (CCA), Pub. L. 106-395 (October 30, 2000)* (Aug. 21, 2001). Because the same issue arises with respect to passport applications, we subsequently solicited the views of the Department of State, which responded by letter dated February 28, 2003.

the naturalization of his mother. Section 321 of the INA set forth the conditions for automatic derivative citizenship of children born outside the United States of alien parents. Where the alien parents were still alive and married, section 321 required as a condition the naturalization of both parents. But section 321 also accommodated other situations. Among other things, section 321 specifically provided that a child born outside the United States of alien parents "becomes a citizen of the United States upon fulfillment of the following conditions:"

(1) "the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation";

(2) the naturalization of the mother "takes place while such child is under the age of sixteen years"; and

(3) the child "is residing in the United States pursuant to a lawful admission for permanent residence at the time of the [mother's] naturalization . . . or thereafter begins to reside permanently in the United States while under the age of eighteen years."

INA § 321, 66 Stat. 163, 245 (1952). Section 320 of the INA separately addressed automatic derivative citizenship for a child born outside the United States of one alien parent and one citizen parent; it provided as one of the conditions of such citizenship that the alien parent be naturalized before the child turned 18. Section 101(c)(1) of the INA in turn defined "child" for purposes of subchapter III of the INA, which included section 321.

In enacting the CCA in 2000, Congress created a new section 320 that sets forth the conditions for automatic derivative citizenship for the two categories of children born outside the United States—those born of alien parents and those born of one alien parent and one citizen parent—that had been governed by former sections 321 and 320, respectively. The new section 320 significantly broadens the class of children eligible for automatic citizenship by requiring that no more than one parent need be a citizen. Section 320 now provides:

A child born outside of the United States automatically becomes a citizen of the United States when all of the following conditions have been fulfilled:

(1) At least one parent of the child is a citizen of the United States, whether by birth or naturalization.

(2) The child is under the age of eighteen years.

> (3) The child is residing in the United States in the legal and physical custody of the citizen parent pursuant to a lawful admission for permanent residence.

INA § 320, 8 U.S.C. § 1431. The CCA did not amend section 101(c)(1), which continues to define "child" for purposes of subchapter III of the INA, which now includes new section 320.

## II.

Unlike former section 321, new section 320 does not specifically address the eligibility of children born out of wedlock for derivative citizenship. Rather, it generally confers automatic derivative citizenship on any "child" when a custodial parent is or becomes a citizen and when its age and residency requirements are satisfied. Whether an alien child who was born out of wedlock and whose paternity has not been established by legitimation is eligible under the CCA for derivative citizenship upon the mother's naturalization therefore depends on the scope of the definition of the term "child" in section 101(c)(1).

Section 101(c)(1) provides:

> The term "child" means an unmarried person under twenty-one years of age and includes a child legitimated under the law of the child's residence or domicile, or under the law of the father's residence or domicile, whether in the United States or elsewhere, and except as otherwise provided in sections 1431 and 1432 of this title, a child adopted in the United States, if such legitimation or adoption takes place before the child reaches the age of 16 years (except to the extent that the child is described in subparagraph (E)(ii) or (F)(ii) of subsection (b)(1) of this section), and the child is in the legal custody of the legitimating or adopting parent or parents at the time of such legitimation or adoption.

INA § 101(c)(1), 8 U.S.C. § 1101(c)(1) (2000).

We understand the words "legitimated," "legitimation," and "legitimating" in this definition to refer to the formal legal process of establishing a child's paternity. This understanding is consistent with former section 321(a)(3), which, as noted above, in conjunction with this same definition of "child," established as one condition of derivative citizenship that "the paternity of the child has not been established by legitimation." The fact that section 101(c)(1) itself treats mothers and fathers differently by allowing legitimation "under the law of the child's residence or domicile, or under the law of the father's residence or domicile," but not under the law of the mother's, further supports our reading that "legitimation" refers to the establishment of paternity. We therefore will use "legitimated" and

"unlegitimated" as shorthand terms to refer, respectively, to a child whose paternity has been established by legitimation and to a child whose paternity has not been so established.

## A.

The question whether the unlegitimated offspring of an alien mother is a "child" within the meaning of section 101(c)(1) is complicated by the fact that section 101(c)(1) is poorly drafted. Among other things, section 101(c)(1) runs in circles by using the term it is defining—"child"—as part of the substantive definition of that same term. Worse, it fails to establish any coherent relationship between its "means" phrase ("*means* an unmarried person under twenty-one years of age") and its 110-word "includes" phrase ("*includes* a child legitimated . . ."). Ordinarily, one would expect an "includes" phrase to clarify that the scope of a "means" phrase is *broader* than might be evident (i.e., "includes" more than it unambiguously "means"). In section 101(c)(1), however, the substance of the "includes" phrase in no way elucidates, and in fact appears entirely unrelated to, possible meanings of "unmarried person under twenty-one years of age." Instead, the arguable purpose of the "includes" phrase is to provide some sort of implied *exception* to the "means" phrase by *excluding* from the definition of "child" some set of "unmarried person[s] under twenty-one years of age" that it does not say is included.[2]

We discern four possible approaches to section 101(c)(1):

*Approach 1*: Under a strictly literal reading, the "includes" phrase would be understood not to limit the "means" phrase, so that any "unmarried person under twenty-one years of age" would be a "child." It is true that this approach would render the entire "includes" phrase surplusage, but this approach could be defended on the ground that the phrase is in fact cast as surplusage.

The three other approaches would construe—or, more candidly, rewrite—section 101(c)(1) to reflect competing versions of what the definition supposedly means. Under these approaches, the "includes" phrase would be recast as an exception to the general definition of "child."

*Approach 2*: Under one rewriting, section 101(c)(1) might be understood to mean:

> The term "child" means an unmarried person under twenty-one years of age, except that (A) it shall include any such person legiti-mated under the law of the such person's residence or domicile, or

---

[2] The two "except" clauses appended to the "includes" phrase are also poorly structured. Because they relate only to adopted children, not to legitimated children, we do not address them here. Paragraphs (B) and (C) of our rewriting of section 101(c)(1) in Approach 2 offer one view of what these clauses may have been intended to mean.

under the law of the father's residence or domicile, whether in the United States or elsewhere, only if the legitimation takes place before the person reaches the age of 16 years and only if such person was in the legal custody of the legitimating parent or parents at the time of such legitimation; (B) it shall include (other than for purposes of section 1431 of this title) any such person adopted in the United States only if the adoption takes place before the person reaches the age of 16 years (or, if the person meets the definition of 'child' under subparagraph (E)(ii) or (F)(ii) of subsection (b)(1) of this section, before the person reaches the age of 18 years) and only if such person was in the legal custody of the adopting parent or parents at the time of such adoption; and (C) it shall include, for purposes of section 1431 of this title, any such person adopted in the United States only if such person meets the definition of 'child' under paragraph (E) or (F) of subsection (b)(1) of this section.

Under this rewriting, paragraph (A) (the only paragraph that directly bears on our question) would provide that only certain *legitimated* persons did not fall within the definition. Therefore, under this reading, any *unlegitimated* person who is unmarried and under 21 would be a "child."

*Approach 3*: Under a competing reading—the reading that, as we understand it, your Bureau and the Department of State both favor—paragraph (A) would provide only that certain persons *claiming citizenship through their fathers* did not fall within the definition:

The term "child" means an unmarried person under twenty-one years of age, except that (A) with respect to a person claiming citizenship through the person's father, it shall include a person born out of wedlock only if such person was legitimated under the law of the person's residence or domicile, or under the law of the father's residence or domicile, whether in the United States or elsewhere, before reaching the age of 16 years and while in the legal custody of the legitimating parent or parents . . . .

Under this reading, any unlegitimated person who is unmarried and under 21 would be a "child" (as would be any legitimated person claiming citizenship through the person's mother or satisfying the requirements of paragraph (A)).

*Approach 4*: Alternatively, section 101(c)(1) could be understood to exclude from its scope all persons *born out of wedlock* (whether legitimated or unlegitimated) who are not specified in the "includes" phrase. The relevant portion of this rewriting might read:

> The term "child" means an unmarried person under twenty-one years of age, except that (A) it shall include any such person who was born out of wedlock only if such person was legitimated under the law of such person's residence or domicile, or under the law of the father's residence or domicile, whether in the United States or elsewhere, before reaching the age of 16 years and only if such person was in the legal custody of the legitimating parent or parents at the time of such legitimation . . . .

Under this reading, no unlegitimated person would qualify as a "child" under paragraph (A).

## B.

It is, happily, unnecessary for us to further parse the text of section 101(c)(1), for former section 321(a)(3) provides a ready answer to the question whether an unlegitimated person may qualify as a "child" under section 101(c)(1). Because former section 321(a)(3) specifically contemplated the situation where a "*child* was born out of wedlock and the paternity of the *child* has not been established by legitimation" (emphasis added), it is indisputable that before enactment of the CCA the term "child" in section 101(c)(1) included unmarried persons under the age of 21 who were born out of wedlock and unlegitimated. And because the CCA did not modify the definition of "child" in section 101(c)(1), it follows *a fortiori* that the term "child" continues to include unmarried persons under the age of 21 who were born out of wedlock and who are unlegitimated.

We therefore must eliminate from the list of possible approaches to section 101(c)(1) Approach 4, under which no unlegitimated person would qualify as a "child." Under each of the three remaining approaches, any unlegitimated person who is unmarried and under age 21 would be a "child." We therefore need not decide among these three approaches.[3]

---

[3] If the Secretary of Homeland Security were to adopt Approach 3 by regulation, we expect that any court reviewing whether that position is consistent with section 101(c)(1) and section 320 would be very likely to conclude that it is. *See Chevron U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 844–46 (1984); *United States v. Mead Corp.*, 533 U.S. 218, 229 (2001); INA § 103(a)(1), (3), 8 U.S.C. 1103(a)(1), (3) (2000) (charging Secretary with "the administration and enforcement [with certain exceptions] of this chapter and all other laws relating to the immigration and naturalization of aliens," and directing Secretary to "establish such regulations . . . as he deems necessary for carrying out his authority under the provisions of this chapter"). Although we recognize that this approach results in differential treatment of fathers and mothers of children born out of wedlock—i.e., only certain legitimated children may seek derivative citizenship through their fathers, whereas both legitimated and unlegitimated children may seek derivative citizenship through their mothers—we believe that this approach would also withstand scrutiny under the Equal Protection Clause, at least so long as the legitimation requirement does not in a particular case create an "inordinate and unnecessary hurdle[]" for fathers. *Nguyen v. INS*, 533 U.S. 53, 70 (2001) (upholding INA section 309); *see also id.* at 63 (noting that "[f]athers and mothers are not similarly situated with regard to the proof of biological

## C.

Because any unlegitimated person who is unmarried and under age 21 is a "child" under section 101(c)(1), it follows that the naturalization of the child's mother satisfies the parental-citizenship condition to derivative citizenship set forth in section 320(a)(1).

Our conclusion is consistent both with the statutory history of derivative citizenship and with the CCA's legislative history. Because former section 321 set forth as a usual condition of derivative citizenship "[t]he naturalization of both parents," it had been necessary for former section 321 to address specifically certain circumstances, including that of unlegitimated children, where the condition of naturalization of both parents was regarded as unreasonable. Because new section 320 significantly broadens the class of children eligible for automatic citizenship by requiring that no more than one parent need be a citizen, its rule is plainly broad enough to cover unlegitimated children, and it therefore is unsurprising that it does not specifically address them.

According to the House committee report on the CCA (originally titled the "Adopted Orphans Citizenship Act"), the purpose of the CCA was to "modif[y] the provisions of the Immigration and Nationality Act governing acquisition of United States citizenship by certain children born outside of the United States, principally by providing citizenship automatically to such children." H.R. Rep. No. 106-852, at 3 (2000), *reprinted in* 2000 U.S.C.C.A.N. 1499, 1500. The report noted that "[c]urrent law can beneficially be streamlined in a way that will benefit families with foreign-born children." *Id.* at 4, 2000 U.S.C.C.A.N. at 1501; *see also* 146 Cong. Rec. 18493 (Sept. 19, 2000) (statement of Rep. Smith) (bill "designed to streamline the acquisition of United States citizenship by foreign children after they are adopted by American citizens"). Although "[t]he bill as introduced dealt solely with foreign-born adopted children," the final version was to "provide[] the same automatic citizenship upon entry for foreign-born children of a U.S. citizen(s) who are not considered citizens at birth under current law," including "children receiving citizenship on the basis of a parent(s) naturalizing." H.R. Rep. No. 106-852 at 5, 2000 U.S.C.C.A.N. at 1502. Neither the report nor the floor debate indicates any intention to eliminate this benefit for children who were born out of wedlock and who remain unlegitimated.

---

parenthood"). *See also Barthelemy v. Ashcroft*, 329 F.3d 1062, 1068 (9th Cir. 2003) (rejecting equal protection challenge to former INA section 321(a)(3) and noting that "fathers must often take affirmative steps to legitimate their children under the laws of various states and nations, but mothers typically legitimate their children by giving birth").

### III.

An alien child who was born out of wedlock and has not been legitimated is eligible for derivative citizenship under new section 320. Specifically, when the mother of such child becomes a naturalized citizen, the child satisfies the condition that "[a]t least one parent of the child is a citizen of the United States, whether by birth or naturalization." INA § 320(a)(1), 8 U.S.C. § 1431(a)(1).

M. EDWARD WHELAN III
*Acting Assistant Attorney General*
*Office of Legal Counsel*