**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

HERBERT PADILLA CARINO,
*Petitioner*,

v.

MERRICK B. GARLAND, Attorney
General,
*Respondent*.

No. 18-72985

Agency No.
A043-023-209

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted October 22, 2020
Honolulu, Hawaii

Filed May 18, 2021

Before: J. Clifford Wallace, Carlos T. Bea, and
Mark J. Bennett, Circuit Judges.

Opinion by Judge Wallace

### SUMMARY[*]

### Immigration

Denying Herbert Padilla Carino's petition for review of a decision of the Board of Immigration Appeals, the panel held that where it has not been proven that a custody order was entered in error, was contrary to law, or otherwise did not reflect the true legal relationship between a petitioner's parents, a *nunc pro tunc* order cannot retroactively establish a naturalized parent's sole legal custody for the purposes of derivative citizenship under former 8 U.S.C. § 1432(a).

Carino was born in 1981 in the Philippines to Philippine citizen parents, who married after his birth. Carino's father immigrated to the United States in 1982 and naturalized in 1988. In 1990, while living in Hawaii, Carino's father filed for divorce, and the Hawaii family court awarded joint legal custody to the parents. In 1991, Carino was admitted to the United States as a lawful permanent resident. In 2013, after Carino was placed in immigration proceedings due to a drug-related conviction, his parents signed a stipulation that his father was to have sole legal and physical custody of Carino since his arrival in the United States. The Hawaii family court issued a *nunc pro tunc* order granting physical custody of Carino to his father retroactively to 1991.

In pertinent part, the applicable derivative citizenship statute, former 8 U.S.C. § 1432(a), provides that a child derives citizenship upon the "naturalization of the parent

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

having legal custody of the child when there has been a legal separation of the parents." With respect to the legal custody element, this court has held that it refers to *sole* legal custody. Here, the Board concluded that Carino was ineligible for derivative citizenship because there was no evidence that his parents entered into a legal agreement in 1991 that transferred sole legal custody to his father. However, the Board affirmed the immigration judge's grant of protection under the Convention Against Torture.

The panel held that Congress did not intend for this type of *nunc pro tunc* order, one untethered from the facts as they were during Carino's childhood, to give rise to automatic derivative citizenship under section 1432(a). First, the panel explained that this court has rejected the expansive view of *nunc pro tunc* power on which Carino relied. Next, the panel agreed with the First and Fifth Circuits that a strictly federal ground provides a basis for rejecting Carino's argument, explaining that recognizing this *nunc pro tunc* order for the purposes of section 1432(a) would not serve the statute's purpose of protecting the parental rights of a non-citizen parent. Also agreeing with the First and Fifth Circuits, the panel concluded that allowing a state court to modify retroactively a custody agreement during a petitioner's adulthood would improperly give the state court the power to affect the terms and conditions of naturalization.

Further, the panel explained that its holding was consistent with prior precedent of this court that gave weight to a *nunc pro tunc* order where the record indicated that the order did not retroactively create new relationships, but rather recognized an existing relationship under state law. Likewise, the panel noted that other circuits have acknowledged that it might be appropriate to accord weight

to a *nunc pro tunc* modification of a custody agreement to correct an error or reflect the parents' actual agreement.

## COUNSEL

Gary G. Singh (argued), Law Office of Gary G. Singh, Honolulu, Hawaii, for Petitioner.

Laura Halliday Hickein (argued), Trial Attorney; Shelley R. Goad, Assistant Director; Merrick B. Garland, Attorney General; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

## OPINION

WALLACE, Circuit Judge:

Petitioner Herbert Padilla Carino seeks review of the final order of the Board of Immigration Appeals (Board), which denied Carino's request to reconsider the Board's November 14, 2016, denial of his derivative citizenship claim. Carino argues that he is a derivative citizen pursuant to former Immigration and Nationality Act (INA) section 321(a). 8 U.S.C. § 1432(a). He points to a 2013 Hawaii state court *nunc pro tunc* order, issued when Carino was an adult, that purportedly modified his parents' 1990 custody agreement and retroactively established that Carino's father had sole legal custody of Carino while the child resided in the United States. We have jurisdiction pursuant to 8 U.S.C. § 1252(b)(5)(A). "We review de novo the legal questions involved in a claim that a person is a national of the United

States." *Hughes v. Ashcroft*, 255 F.3d 752, 755 (9th Cir. 2001). We deny the petition.

I.

Carino was born in the Philippines in 1981 to Philippine citizens Domingo Carino and Prescila Padilla. His parents were unmarried when he was born, but they married in 1985. Carino's father immigrated to the United States in 1982 and became a naturalized U.S. citizen in 1988. In 1990, while living in Hawaii, Carino's father filed for divorce from Carino's mother. In its divorce decree, the family court awarded "[j]oint legal custody to [Carino's parents] with primary physical custody to [Carino's mother] subject to [Carino's father's] rights of reasonable visitation." Following the divorce, Carino's father filed a visa petition for Carino to bring him to the United States. In 1991, Carino was admitted to the United States in Hawaii as a lawful permanent resident.

In 1994, Carino's father applied for a certificate of citizenship on behalf of Carino to memorialize a claim of automatic derivative citizenship. Four months later, Carino's father withdrew the application and signed a document that stated, "I understand that [Carino] [does] not derive citizenship through my naturalization as I do not have sole legal custody of the [child]." Carino's father did not apply for Carino's naturalization when Carino was a minor, and Carino did not apply for naturalization as an adult.

In 2007, Carino was convicted of a drug-related offense. In 2013, the Department of Homeland Security (DHS) issued a notice to appear charging Carino as removable pursuant to former INA sections 237(a)(2)(A)(iii) and 237(a)(2)(B)(i) for having been convicted of an aggravated felony drug trafficking offense and a controlled substance

offense.  In 2013, after Carino was placed into immigration proceedings, his parents signed a stipulation that Carino's father was "to have sole[] legal and physical custody of [Carino] . . . since his arrival in the United States of America, on November 21, 1991."  On April 24, 2013, the Hawaii family court issued a *nunc pro tunc* order granting "physical custody" of Carino to his father retroactively to November 21, 1991.  According to Carino, the order "was based on the fact that [Carino] was living with his father since 1991, his father was solely responsible and both parents signed a stipulation agreeing that sole legal and physical custody was with the father since 1991."

Between 2013 and 2014, Carino appeared before the Immigration Judge (IJ) and asserted a claim of derivative citizenship based on his father's 1988 naturalization.  During this time, Carino also submitted for the first time an application for a certificate of citizenship to the U.S. Citizenship and Immigration Services (USCIS), claiming automatic derivative citizenship.  In May 2014, USCIS issued a notice of decision denying Carino's application, reasoning that the Hawaii family court order was not entered until 2013, when Carino was an adult.

In November 2014, the IJ rendered an oral decision holding that Carino qualified for automatic derivative citizenship pursuant to former 8 U.S.C. § 1432(a).  According the *nunc pro tunc* order and the parents' stipulation "high probative value," the IJ held that "given [Carino's] testimony, the documents from the family court, and the manner in which [Carino's] father assumed custody of [Carino], attempted to gain his certificate of citizenship, and the fact that [Carino's] mother never appears to have contested her sons moving to Hawaii to live with their

father," Carino automatically derived citizenship from his father.  DHS appealed from the IJ's decision to the Board.

In November 2016, the Board issued a decision holding that the IJ erred in granting Carino's request to terminate proceedings based on a valid claim of derivative citizenship and remanded.  The Board reasoned that because Carino presented no evidence to suggest that his parents entered into a legal agreement in 1991 that would have transferred sole legal custody to his father, a Hawaii state court acting in 1991 would not have recognized his father as having sole legal custody.

In January 2017, the IJ held on remand that Carino was eligible for protection under the Convention Against Torture (CAT) based on his fear of harm in the Philippines because of his drug conviction and the treatment of people believed to be involved with drugs in the Philippines under President Rodrigo Duterte.  In February 2017, DHS appealed from the IJ's decision to the Board, and in September 2017, the Board affirmed the IJ's decision granting CAT protection, dismissed the appeal, and remanded the proceedings for background checks.  In September 2017, the IJ entered an order granting Carino CAT protection. Carino appealed from the IJ's decision to the Board, again challenging the denial of his automatic derivative citizenship claim.  In October 2018, the Board construed Carino's filing as a motion to reopen or for reconsideration of its prior decision and dismissed the appeal.

## II.

"[D]erivative citizenship is determined under the law in effect at [the] time the critical events giving rise to eligibility occurred." *Minasyan v. Gonzales*, 401 F.3d 1069, 1075 (9th Cir. 2005).  We analyze Carino's derivative citizenship

claim pursuant to section 321(a) of the INA, 8 U.S.C. § 1432(a) (section 1432(a)), the provision in effect from the time Carino began residing in the United States in 1991 until Carino's eighteenth birthday in 1999.

Section 1432(a) provides, in pertinent part, that:

> A child born outside of the United States of alien parents . . . becomes a citizen of the United States upon fulfillment of the following conditions: . . .
>
> (3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents . . . ; and if
>
> (4) Such naturalization takes place while such child is under the age of eighteen years; and
>
> (5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of . . . the parent naturalized under clause (2) or (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years.

8 U.S.C. § 1432(a) (repealed 2000).

Carino meets the fourth condition because his father was naturalized in 1988 when Carino was six years old. Carino meets the fifth condition because he began to reside in the United States in 1991 when he was nine years old.

The central issue is whether Carino meets the third condition. The meaning of the term "legal custody" as contained in section 1432(a)(3) is a question of federal statutory interpretation. *See United States v. Casasola*, 670 F.3d 1023, 1029–32 (9th Cir. 2012). "Although uniformity is an important concern in federal statutory interpretation, where the term in question involves a legal relationship that is created by state or foreign law, the court must begin its analysis by looking to that law." *Minasyan*, 401 F.3d at 1076 (citations omitted). "This is especially true where a statute deals with a familial relationship; there is no federal law of domestic relations, which is primarily a matter of state concern." *De Sylva v. Ballentine*, 351 U.S. 570, 580 (1956).

Carino satisfies the third condition's parental legal separation element because his parents separated in 1990 when Carino was nine years old. However, with respect to the condition's legal custody element, we have held that within the context of section 1432(a), "[t]he phrase 'legal custody[]' . . . means sole legal custody." *Casasola*, 670 F.3d at 1029; *see id.* at 1031 (reasoning, in part, that "if [section] 1432(a) were interpreted to allow the naturalization of one parent with joint legal custody to confer automatic derivative citizenship on a child, the statute would not serve the purpose of protecting the custodial, non-citizen parent"). Here, the state court's 1990 decree served as a judicial determination that established joint legal custody between Carino's parents. *Cf. Minasyan*, 401 F.3d at 1076 & n.12 (recognizing the government's concession that the naturalized parent's actual custody of the petitioner satisfied the legal custody condition because "[i]n the absence of a judicial determination or judicial statutory grant of custody where the parents are legally separated, the parent having actual uncontested custody is to be regarded as having 'legal

custody' of the person concerned" (alteration in original) (citation omitted)).  Carino has not shown — and does not allege — that there was a subsequent judicial determination or agreement between his parents before his eighteenth birthday that transferred sole legal custody to his father. Carino, therefore, does not meet the third condition of section 1432(a) and does not automatically derive U.S. citizenship from his father.

## III.

Carino argues that he nevertheless meets the third condition of section 1432(a) and automatically derives U.S. citizenship from his father because of the 2013 state court *nunc pro tunc* order.[1]  At oral argument, Carino conceded that he sought the 2013 order not to correct an error in the in the 1990 decree, but rather to improve Carino's position in his immigration proceedings.  Carino's argument, therefore, suggests that even where there is no evidence of a scrivener's error or an agreement between parents to transfer legal custody to the naturalized parent during a petitioner's childhood, a *nunc pro tunc* order can retroactively establish a naturalized parent's sole legal custody for the purposes of automatic derivative citizenship under section 1432(a).  For the reasons discussed below, we conclude that it cannot.

---

[1] Although the stipulation signed by Carino's parents in 2013 stated that Carino's father was to have "sole[] legal and physical custody" of Carino since 1991, the state court's order grants the "motion to modify physical custody."  We do not reach whether the state court *nunc pro tunc* order also applied to the legal custody arrangement between Carino's parents as the distinction does not affect our holding.

### A.

First, we have rejected the expansive view of *nunc pro tunc* power on which Carino's argument relies. The Supreme Court has held that where federal law incorporates a state characterization, a state trial court's construction of state law is not binding on a federal court, although the law of the state as construed by the state's highest court is controlling on the issue. *Comm'r v. Estate of Bosch*, 387 U.S. 456, 457, 465 (1967); *see also Fierro v. Reno*, 217 F.3d 1, 5 (1st Cir. 2000). "Nunc pro tunc merely describes inherent power of court to make its records speak the truth. . . . Nunc pro tunc signifies now for then, or in other words, a thing is done now, which shall have same legal force and effect as if done at time when it ought to have been done." *United States v. Allen*, 153 F.3d 1037, 1044 (9th Cir. 1998), *quoting Nunc Pro Tunc*, Black's Law Dictionary (5th ed. 1979). However, a court's *nunc pro tunc* order to "make its records speak the truth" must be consistent with the facts at the time of the original judgment. In *United States v. Sumner*, 226 F.3d 1005 (9th Cir. 2000), we held the following:

> The power to amend nunc pro tunc is a limited one, and may be used only where necessary to correct a clear mistake and prevent injustice. It does not imply the ability to alter the substance of that which actually transpired or to backdate events to serve some other purpose. Rather, its use is limited to making the record reflect what the . . . court actually intended to do at an earlier date, but which it did not sufficiently express or did not accomplish due to some error or inadvertence.

*Id.* at 1009–10 (emphasis added) (quotation marks and citations omitted).

Carino's argument fails in part because it erroneously assumes that the Hawaii state court could alter what actually happened during his childhood and backdate his parents' 2013 agreement to serve the purposes of his immigration proceedings. However, we need not conclusively determine whether the 2013 state court order was a proper *nunc pro tunc* order. We hold that Congress did not intend for this type of *nunc pro tunc* order, one untethered from the facts as they were during Carino's childhood, to give rise to automatic derivative citizenship under section 1432(a).

## B.

We agree with the First and the Fifth Circuits that a strictly federal ground provides a basis for rejecting Carino's argument. *See Bustamante-Barrera v. Gonzales*, 447 F.3d 388, 400–01 (5th Cir. 2006) (holding that the petitioner did not meet section 1432(a)'s criteria despite a state *nunc pro tunc* order, which retroactively awarded sole legal custody to the petitioner's citizen mother, because during the relevant time his parents shared joint legal custody); *Fierro*, 217 F.3d at 6 (holding that a state *nunc pro tunc* order, which retroactively changed custody from the petitioner's non-citizen mother to his citizen father, did not establish that the petitioner met section 1432(a)'s criteria because during the relevant time he was in his mother's custody). In enacting section 1432(a), "Congress was concerned with the legal custody status of the child *at the time* that the parent was naturalized and during the minority of the child." *Minasyan*, 401 F.3d at 1080 n.20, *quoting Fierro*, 217 F.3d at 6. "In enacting this particular derivative citizenship provision, Congress sought to protect parental rights, to preserve the family unit, and to ensure that only those alien children

whose 'real interests' were located in the United States with their custodial parent, and not abroad, should be automatically naturalized." *Id.* at 1079. We have acknowledged that "[i]f United States citizenship were conferred to a child where one parent naturalized, but the other parent remained an alien, the alien's parental rights could be effectively extinguished." *Barthelemy v. Ashcroft*, 329 F.3d 1062, 1066 (9th Cir. 2003), *overruled in part on other grounds as recognized in United States v. Mayea-Pulido*, 946 F.3d 1055, 1062 (9th Cir. 2020). Here, the parental rights of Carino's mother were not at stake because Carino achieved majority in 1999 and neither parent had custodial rights in 2013 when the state court entered its *nunc pro tunc* order. Recognizing this *nunc pro tunc* order for the purposes of section 1432(a) would not serve the statute's purpose of protecting the parental rights of a non-citizen parent.

We also agree with the First and the Fifth Circuits that "recognizing the *nunc pro tunc* order in the present case would in substance allow the state court to create loopholes in the immigration laws on grounds of perceived equity or fairness." *Fierro*, 217 F.3d at 6; *see also Bustamante-Barrera*, 447 F.3d at 401. We have held that foreign nationals can only obtain U.S. citizenship "upon terms and conditions specified by Congress," and "[c]ourts are without authority to sanction changes or modifications; their duty is rigidly to enforce the legislative will. . . ." *Zixiang Li v. Kerry*, 710 F.3d 995, 1003 (9th Cir. 2013), *quoting INS v. Pangilinan*, 486 U.S. 875, 884 (1988). Allowing a state court to modify retroactively a custody agreement during a petitioner's adulthood would improperly give the state court the power to affect the terms and conditions of naturalization.

We hold that where it has not been proven that a custody order was entered in error, was contrary to law, or otherwise did not reflect the true legal relationship between a petitioner's parents, a *nunc pro tunc* order cannot retroactively establish a naturalized parent's sole legal custody for the purposes of section 1432(a). Accordingly, the 2013 state court order that purportedly *nunc pro tunc* modified Carino's parents' 1990 custody arrangement did not retroactively transfer sole legal custody to Carino's father for the purposes of section 1432(a).

## C.

Our holding here is consistent with our prior decisions. In *Minasyan*, we held that a *nunc pro tunc* divorce decree entered after the petitioner had achieved majority established for the purposes of section 1432(a) that his parents had legally separated before his mother's naturalization because the decree "did not create a legal fiction, but rather acknowledged a separation that was actually in effect both in practice and as a matter of [state] law" during the relevant time. 401 F.3d at 1080 n.20. We accorded weight to the *nunc pro tunc* order entered after the petitioner's eighteenth birthday because the record indicated that the order did not retroactively create new legal relationships, but rather recognized an existing relationship under state law.

Other circuits have also acknowledged that it might be appropriate to accord weight to a *nunc pro tunc* modification of a custody agreement to correct an error or reflect the parents' actual agreement. In *Bustamante-Barrera v. Gonzales*, 447 F.3d 388 (5th Cir. 2006), the Fifth Circuit acknowledged: "It is at least possible that circumstances could exist in which such a decree would legitimately demonstrate that an alien child had in fact been in the sole legal custody of his one naturalized parent prior to his

eighteenth birthday." *Id.* at 401. In *Fierro v. Reno*, 217 F.3d 1 (1st Cir. 2000), the First Circuit stated: "There are too many possible variations to say in the abstract, as the government urges, that a later state court decree must always be disregarded in applying section 1432." *Id.* at 7.

## IV.

The Board did not err in holding that Carino failed to show that he meets the third condition of section 1432(a) and that he did not automatically derive U.S. citizenship from his father.

The petition for review is **DENIED.**